UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| ROLLS-ROYCE CORPORATION, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:04-CV-0968-SEB-VSS |
| | ) | |
| ALCOR ENGINE COMPANY, INC., | ) | |
| THE TIMKEN COMPANY, and | ) | |
| TIMKEN ALCOR AEROSPACE | ) | |
| TECHNOLOGIES, INC., | ) | |
| Defendants. | ) | |

## ENTRY GRANTING MOTION TO DISMISS

This matter comes before the Court on Defendant The Timken Company's

("Timken") Motion to Dismiss, pursuant to Rule 12(b)(6) and Rule 12(b)(2) of the

Federal Rules of Civil Procedure, respectively, asserting a failure to state a claim for

which relief can be granted and the lack of personal jurisdiction.  Plaintiff's Complaint

charges violations of the Lanham Act, 15 U.S.C. § 1125(a), and common law claims of

misappropriation of trade secrets, unfair competition, copyright infringement, conversion

and fraudulent conveyance.  For the reasons outlined below, we GRANT Timken's

Motion to Dismiss for lack of personal jurisdiction.

Factual and Procedural Background

The underlying dispute involves the alleged misappropriation by the Alcor Engine Company ("Alcor") of Rolls Royce's intellectual property relating to the Model 250 aircraft engine.  Alcor allegedly wrongfully sought and obtained critical government approval for the manufacture and sale of airplane replacement parts to the United States Army ("Army") and the Federal Aviation Administration ("FAA").  Compl. ¶ 21.

Plaintiff Rolls-Royce Corporation ("Rolls-Royce") is a Delaware corporation with its principal place of business in Indianapolis, Indiana, and is successor to Allison Engine Company, the original manufacturer and FAA certificate holder for the Model 250 gas turbine and engine parts.  Compl. ¶ 2.

Defendant Timken is an Ohio corporation with its principal place of business in Ohio.  Timken is the parent corporation of the subsidiary (MPB) who acquired the subsidiary (Timken-Alcor) that allegedly purchased the corporation (Alcor) whose acts are in controversy in this case.  (Def. Motion to Dismiss, Doc. 22-21, p. 7.)  Contrary to Plaintiff's allegation, Timken has no office or plant in Indiana.  Timken Reply; Bump Aff. ¶ 1. Mark Bump, Timken's corporate counsel, explains that the Timken *Corporation*, a first-tier subsidiary of The Timken Corporation, has a plant in South Bend, Indiana, but The Timken *Company*, the named defendant in this case, does not. Id. ¶ 2.

Defendant Alcor is a New Jersey corporation with its principal place of business in Gilbert, Arizona.  Alcor is an aftermarket supplier of FAA certified replacement parts used in the aviation industry.  Alcor Answer ¶ 3.

Defendant, Timken-Alcor Aerospace Technologies ("Timken-Alcor"), is a Delaware corporation which manufactures and sells aerospace engine replacement parts, with its principal place of business in Gilbert, Arizona, and is one of five independent, subsidiaries of MPB Corporation.[1]  Timken-Alcor Answer ¶ 4; Timken-Alcor Corp. Discl. Statement ¶ 1.

In 2004, Timken-Alcor and Alcor executed an Asset Purchase Agreement, the details of which are not before the Court, which Rolls-Royce alleges was a complete acquisition by Timken of Alcor through Timken-Alcor, a subsidiary formed for this purpose.  Compl. ¶ 5.

In response to Timken's motion to dismiss for lack of personal jurisdiction, Rolls-Royce requested leave to take limited expedited discovery in order to more fully respond to the motion, arguing that Timken's exclusive control of information related to its Indiana contacts and its alleged involvement in the acquisition of Alcor impeded its efforts to frame a proper response.  Magistrate Judge Shields granted the motion for expedited discovery, limiting her order to information "relating to organizational structure

---

[1]MPB Corporation is not named as a defendant in this action but is mentioned here to permit a full understanding of the corporate relationships and hierarchy.  MPB Corporation is also a subsidiary of Timken, in fact, one of forty-three Timken subsidiaries.  Exh C. RR. Opp Brief, Doc. # 58).

between Timken and Timken-Alcor and the structure of the transaction by which Timken-Alcor purports to acquire Alcor."[2]

In response to interrogatories and document requests from Rolls-Royce, Timken provided *inter alia* a copy of the Alcor Purchase Agreement, but lacking certain referenced exhibits or schedules.  Timken objected to several other discovery requests on the grounds that they were premature and "strayed far beyond the parties' agreement" as reflected in the Order.[3]  Despite Rolls-Royce's repeated references to its need for additional discovery in order to fully and fairly evaluate whether Timken is a properly named defendant,[4] it has not moved the Court to compel Timken to respond.  As a result, we shall proceed to rule on the motion to dismiss on the basis of the evidence before us.

In addition to its personal jurisdiction claims, Timken also asserts that Rolls-Royce's Complaint fails to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), lacking any allegations of involvement by Timken in the events giving rise to this suit.  We address this issue below as part of our discussion of specific jurisdiction, in view of the fact that this part of Defendant's motion is premised on the same factual predicate.

---

[2]Docket # 36, December 21, 2004.

[3]  We agree that some of Rolls-Royce's discovery requests do appear to exceed the scope of the two main areas permitted in the Expedited Discovery Order. See, e.g. Rolls-Royce's Interrog. No. 4. in Pl.'s Resp. to Mot. to Dismiss at 5.

[4]Docket # 65; Exhibits J and K, attorney communications.

<u>Legal Analysis</u>

I.  <u>Rule 12(b)(2) Standard of Review</u>[5]

Rule 12(b)(2) permits the dismissal of a claim for lack of jurisdiction over the person.  Fed. R. Civ. P. 12(b)(2).  In considering a motion advanced under Rule 12(b), we examine the sufficiency of the plaintiff's complaint as opposed to the merits of the lawsuit, and direct dismissal only if it appears to a certainty that the plaintiff can establish no basis for asserting personal jurisdiction.  We accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff bearing on personal jurisdiction.  Yet, if a complaint consists of conclusory allegations unsupported by factual assertions, it fails even under the liberal standards of Rule 12(b).  In considering a Rule 12(b)(2) motion to dismiss, we review any affidavits and other documentary evidence which have been filed, so long as factual disputes are resolved in favor of the non-movant, in this case, Plaintiffs.  <u>Int'l Med. Group Inc. v. Am. Arbitration Ass'n</u>, 2001 WL 984808, at 3-4 (S.D. Ind. 2001) (Barker, J.); <u>Gibson v. City of Chicago</u>, 910 F.2d 1510, 1520-21 (7th Cir. 1990).

II.  <u>Personal Jurisdiction Analysis</u>

Because federal courts are courts of limited jurisdiction, a plaintiff must prove that personal jurisdiction over defendants exists, if there is a challenge to it, by establishing a

---

[5]  We shall not include a discussion of the Rule 12(b)(6) issues beyond the 12(b)(2) analysis, given our decision to dismiss the Complaint against Timken for lack of personal jurisdiction, pursuant to 12(b)(2).

5

prima facie case that jurisdiction is proper.  Purdue Research Foundation, 338 F.3d 773,

782-83 (7th Cir. 2003).  To establish personal jurisdiction in this district, a defendant's

contacts with Indiana must satisfy the requirements of Trial Rule 4.4 -- Indiana's

equivalent of a long-arm statute -- and also satisfy federal due process standards.  Anthem

Ins. Cos. v. Tenet Healthcare Corp., 730 N.E.2d 1227, 1231-32 (Ind. 2000) (internal

quotations omitted).  If Indiana law supports an exercise of personal jurisdiction over a

defendant, a determination must be made as to whether such an exercise of jurisdiction

comports with the federal due process requirements.  A proper exercise of jurisdiction is

premised on a defendant's having "certain minimum contacts with [the forum] such that

the maintenance of the suit does not offend traditional notions of fair play and substantial

justice."  Anthem Ins. Cos., 730 N.E.2d at 1233 (quoting International Shoe Co. v.

Washington, 326 U.S. 310 (1945)) (internal quotations omitted).

There are two kinds of personal jurisdiction – specific and general.  A court may

exercise specific jurisdiction over a defendant where the cause of action arises out of or

relates to the defendant's purposefully-established contacts with the forum state.

Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984); Burger

King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985).  If a defendant's contacts with a

forum state are "continuous and systematic," the court may assert general jurisdiction

over that defendant for any suit in the forum state.  Helicopteros Nacionales de Colombia,

S.A., 466 U.S. at 416.  In contrast to specific jurisdiction, general jurisdiction allows a

defendant to be sued in the forum state regardless of the subject matter of the litigation.

6

Logan Prods., Inc. v. Optibase, Inc., 103 F.3d 49, 52 (7th Cir. 1996).  The Constitutional requirement for general jurisdiction is considerably more stringent than that for specific jurisdiction because the defendant's contacts with a particular forum must necessarily be so pervasive as to make the exercise of jurisdiction over the defendant fundamentally fair in litigation arising from any transaction or occurrence taking place anywhere else in the world.  Purdue Research Foundation, 338 F.3d at 787.

In assessing a corporation's contacts with a forum state, the jurisdictional contacts of a subsidiary are not imputed to a parent entity.  Purdue Research Foundation, 338 F.3d at 788; see also Anthem Ins. Cos., Inc., 730 N.E.2d at 1240 n.17; Central States, S.E. & S.W. Areas Pension Fund v. Reimer Express World Corp., 230 F.3d 934, 943-44 (7th Cir. 2000); Consolidated Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1293 (11th Cir. 2000); Dickson Marine Inc. v. Panalpina, Inc., 179 F.3d 331, 338 (5th Cir. 1999).  However, this presumption of institutional independence may be overcome in certain circumstances.  Specifically, the jurisdictional contacts of a subsidiary may be imputed to a parent where: "(1) a parent utilizes its subsidiary in such a way that an agency relationship can be perceived . . . or (2) where the parent has greater control over the subsidiary than normally associated with common ownership and directorship or (3) where the subsidiary is merely an empty shell." Wesleyan Pension Fund v. First Albany Corp., 964 F. Supp. 1255, 1261-1262 (S.D. Ind. 1997) (Barker, C.J.); see also Anthem, 730 N.E.2d at 1240 n.17 (stating these factors).

In briefing this motion to dismiss, both parties presented constitutional due process

arguments but made only scant reference to Indiana Trial Rule 4.4.  Ordinarily, the analysis begins with the state's long-arm statute and then proceeds to the constitutional analysis, if personal jurisdiction has been determined to exist under the long-arm statute.  However, the Seventh Circuit dispensed with this sequencing of the analysis when it becomes patently clear that an exercise of jurisdiction would not comport with federal due process requirements.  Accordingly, so shall we, based on similar concerns for judicial economy and in light of the parties' briefings.  See Purdue Research Foundation, 338 F.3d at 779.

A.   General Jurisdiction Analysis[6]

Rolls-Royce does not contend that Timken's control over Timken-Alcor – a subsidiary of Timken allegedly created for the sole purpose of the acquisition of Alcor – or any of its other subsidiaries is so substantial that we should impute the subsidiaries' jurisdictional contacts to Timken.  Rather, Rolls-Royce attempts to establish a prima facie basis for general jurisdiction over Timken by citing: (1) the considerable size of Timken, including the existence of an Indianapolis office and a South Bend plant operated by Timken subsidiaries; (2) the interactive nature of Timken's website; and (3) a 1998 nondisclosure agreement between Timken and Rolls-Royce's predecessor, Allison Engine

---

[6]  Rolls-Royce's scant discussion of whether Timken has contacts with Indiana that comport with the requirements of Trial Rule 4.4(A) (Indiana's long-arm statute) "anticipates that Timken's discovery responses will satisfy subsections (1) or (3) of Indiana Trial Rule 4.4(A)." Pl.'s Resp. to Timken's Mot. to Dismiss at 11.  However, it is possible that Rolls-Royce's failure to address the long-arm statute was influenced by Timken's claim that it need not address the matter because an exercise of personal jurisdiction over Timken would violate federal Due Process standards.  Timken's Br. in Supp. of Mot. to Dismiss at 4 n.1.

Company, Inc.  However, these factors, jointly and severally, do not support a finding

that Timken is constructively present in Indiana so as to subject it to suit for claims

arising here.  We address each of Plaintiff's contentions below:

       1.  <u>Timken's Indiana Business Locations and the Magnitude of its</u>
<u>Operations</u>:

Rolls-Royce asserts that general jurisdiction over Timken can be established based

on Timken's maintaining an office in Indianapolis and a plant in South Bend, Indiana.

Rolls-Royce musters data referencing Timken's international business presence, its yearly

earnings, and the number of its employees – implying that, based on Timken's size, its

contacts in Indiana are extensive and influential.  Rolls-Royce provides as evidentiary

support for this assertion that Timken operates out of two Indiana business locations, and

printed pages copied from Timken's website list various "Key Contacts," including the

Indianapolis office and South Bend plant.  Pl.'s Resp. to Mot. to Dismiss; Ex. E4.  No

evidence has been produced, however, to establish that Timken (as opposed to a

subsidiary) owns or operates these entities.

Timken specifically rebuts Rolls-Royce's allegations by adducing evidence to

prove that neither the office nor the plant is directly owned or operated by Timken.

Timken asserts that The Timken Corporation, a first-tier subsidiary of Timken, operates a

repair-and-distribution plant in South Bend.  Def.'s Reply Br.; 2nd Bump Aff. at ¶ 2.[7]

---

[7]  Timken has submitted the affidavits of Mark Bump both with its original Brief in
Support of its Motion to Dismiss (1st Bump Aff. filed on December 8, 2004) and its Reply Brief
(continued...)

Rolls-Royce has made no showing that Timken controls The Timken Corporation to such an extent that its jurisdictional contacts should be imputed to Timken.  See Purdue Research Foundation, 338 F.3d at 788; (noting that some courts recognize that the jurisdictional contacts of a predecessor corporation may be imputed to its successor corporation without offending due process); and Wesleyan Pension Fund, 964 F. Supp. at 1261-1262.  Without evidence to that effect, the jurisdictional contacts of The Timken Corporation (or any other subsidiary of Timken) can not support a finding of general jurisdiction over Timken.

Furthermore, Timken asserts that the "unnamed" office in Indianapolis is not actually owned by Timken, which claim Timken supports via the sworn statement of its corporate counsel, Mr. Bump.  Mr. Bump's affidavit declares *inter alia* that Timken has no offices or employees in Indiana, is not registered to do business in Indiana, and generally does not conduct any business in Indiana.  1st Bump Aff. at ¶¶ 2, 3, 8, 9. Timken's evidence clearly rebuts Rolls-Royce's allegation that Timken has a physical business presence in Indiana.

Rolls-Royce's second argument that the sheer size of Timken suffices to subject it to general jurisdiction in Indiana is buttressed by absolutely no caselaw authority.  This novel proposition contending that the earnings or global presence of a corporation creates general jurisdiction in certain forums is just that – novel.  Accordingly, we discount such

---

[7](...continued)
in Support of its Motion to Dismiss (2nd Bump Aff. filed on March 7, 2005).

references to Timken's sales and international operations as immaterial in terms of the

Court's ability to exercise general jurisdiction over it.

        2. <u>Timken's Interactive Website as a Basis for Establishing Minimum</u>

<u>Contacts</u>:

        Rolls-Royce alleges in conclusory terms that, because Timken's website –

<u>www.timken.com</u> – "allows the active exchange of information between Indiana residents

and Timken," Timken is subject to general jurisdiction in this court.  Pl.'s Resp. to Mot.

to Dismiss at 12.

        While the law pertaining to Internet activity and its effect on the minimum contacts

analysis is fairly new and still developing, courts reviewing the issue have ruled that "the

likelihood that personal jurisdiction can be constitutionally exercised is directly

proportionate to the nature and quality of commercial activity that an entity conducts over

the Internet." <u>Zippo Mfg. Co. v. Zippo Dot Com, Inc.</u>, 952 F.Supp. 1119, 1124 (W.D. Pa.

1997).  Thus, a defendant who uses the Internet to actively enter into contracts and

conduct business in the forum state may likely be subject to personal jurisdiction there.

<u>Id.</u>; <u>Accord</u> <u>Publications Intern., Ltd. v. Burke/Triolo, Inc.</u>, 121 F. Supp. 2d 1178, 1182

(N.D. Ill. 2000).  In contrast, "passive" websites, which merely post information but offer

no opportunity to conduct business, may likely not be subject to personal jurisdiction

based on that alone.  <u>Zippo Mfg. Co.</u>, 952 F. Supp. at 1124.

        "Interactive" websites which allow users to exchange information with the entity

maintaining the site require that the exercise of jurisdiction be "determined by examining

the level of interactivity and commercial nature of the exchange of information that

occurs on the Web site."  Id.; See also McConnell and Sons v. Target Data Systems, 84

F.Supp.2d 961, 971 (N.D. Ind. 1999) (discussing these three categories).  Because,

theoretically, all websites could be said to continuously and systematically establish

contact with and in any state, a court evaluating a defendant's "interactive" website must

determine whether the defendant has purposefully directed the website at the particular

forum state.  Search Force, Inc. v. Data Force Int'l, Inc., 112 F.Supp.2d 771, 777 (S.D.

Ind. 2000); NeoMedia Technologies, Inc. v. AirClic, Inc., 2004 WL 848181 at 3-4 (N.D.

Ill. 2004) (stating that "[w]hether a website is specifically targeted towards a particular

forum is a factor to be considered in determining jurisdiction based on [an 'interactive']8

website.").

     Rolls-Royce has submitted various printed excerpts of Timken web pages.

However, it has failed to define the level of interactivity accomplished by the website and

to explain why Timken is subject to general jurisdiction on that basis.  In an effort to

show that Timken conducts business via its website, the web pages submitted by Rolls-

Royce were extracted from the "Purchase" section of www.timken.com.  Ex. F of Resp.

to Mot. to Dismiss.  Again, Rolls-Royce did not elaborate on "the level of interactivity

and commercial nature of the exchange of information that occurs" on this portion of

Timken's website (Zippo Mfg. Co., 952 F. Supp. at 1124), merely indicating instead the

---

    8  We use the term "interactive" to describe the middle category of Internet activity,
though some other courts use the term "hybrid" to refer to that level of activity.

existence of various web links which they contend creates an inference of active Internet promotion and marketing.[9]  Ex. K to Pl.'s Resp. to Mot. to Dismiss: Raff Aff. at ¶ 6.

Timken responds that all purchases facilitated by www.timken.com are governed by The Timken *Corporation*, not The Timken *Company,* its subsidiary.  2nd Bump Aff. at ¶ 3.  Because Rolls-Royce has not claimed that the jurisdictional contacts of this subsidiary are imputed to Timken, we will not examine the business activity conducted through this website.[10]  Timken has not expressly denied that the two websites are in existence and maintained as claimed by Rolls-Royce, to wit, The Timken Store at Endorsia and TimkenStore.com, but Timken does assert that these websites "are not open to the general public (except for the ability to purchase merchandise such as pens, hats, and other logo merchandise) . . . rather only to distributors and business partners of The Timken Company."  2nd Bump Aff. at ¶ 6.  Assuming this limited opportunity to conduct business qualifies as "interactive Internet activity," Rolls-Royce nonetheless has not argued that Timken purposefully directed its website at Indiana residents.  Without such a

---

[9]  Omitting any factual corroboration for the level of interactivity of Timken's website, Rolls-Royce apparently relies instead on the 12(b)(2) standard of resolving factual disputes in the non-movant's favor.  Pl.'s Resp. to Mot. to Dismiss at 12 ("To the extent there is any factual doubt as to whether Timken's website creates a purchase opportunity for online users, it should be construed against Timken").

[10]  Timken also has demonstrated that, in order to make a purchase using this website, a potential customer must select his or her geographical location, at which point the website provides the contact information for the nearest sales office.  A customer who selects Indiana is directed to contact offices outside of Indiana.  See Attachment 2 to Timken's Reply in Supp. of Mot. to Dismiss.

showing, Timken theoretically would be subject to suit in any jurisdiction where a consumer can access the Internet.  See NeoMedia Technologies, Inc., 2004 WL 848181 at 3-4; InfoSys Inc. v. Billingnetwork.com, Inc., 2003 WL 22012687 at 4 (N.D. Ill. 2003) (refusing to find general jurisdiction over a defendant with an interactive website without evidence that the defendant had purposefully directed activity toward the forum state).

Without further evidence that Timken either conducts substantial business via its website or purposefully directs its website towards Indiana residents, Timken's Internet activity alone is insufficient in satisfying the high standard of continuous and systematic contacts required to assert general jurisdiction over Timken in Indiana.  Even after resolving all factual conflicts in favor of Rolls-Royce, we are unable to find that Rolls-Royce has established that Timken is constructively present in Indiana, sufficient to subject it to suit for claims arising here under an exercise of general jurisdiction.

### 3.   The 1998 Nondisclosure Agreement Between Timken and Allison

Rolls-Royce contends, without much elaboration, that a 1998 nondisclosure agreement signed by Timken and Rolls-Royce's predecessor-in-interest, Allison, suffices as a basis for general jurisdiction over Timken in Indiana.  The nondisclosure agreement, which is not connected substantially to the case at bar, pertains to the voluntary exchange between the two companies of "technical information which may or may not be patentable or constitute the basis of patentable inventions which it considers proprietary to it . . . relating to gas turbine engines, aircraft, and related designs, drawings, specifications, applications, components and related topics thereof."

While a contract may, under certain circumstance, be closely enough related to a suit to create a basis for specific jurisdiction, "contracting with an out-of-state party alone cannot establish automatically sufficient minimum contacts in the other party's home forum. . . .  Instead, [courts] are directed to adopt a 'highly realistic' approach and to place the contract in the context of the entire transaction of which it is a part."  Purdue Research Foundation, 338 F.3d 773, 781 (7th Cir. 2003) (quoting Burger King v. Rudzewicz, 471 U.S. 462, 478 (1985)).  As noted previously, the nondisclosure agreement referenced in the case at bar lacks any substantial connection to events giving rise to this suit.  Thus,  it does not supply grounds for an exercise of specific jurisdiction.

Rolls-Royce rejoins that this contract contributes to a finding of general jurisdiction, whereby Timken is amenable to suit in Indiana.  Pl.'s Resp. at 11.   We are not persuaded.  If the single act of contracting with an out-of-state party does not suffice to establish specific jurisdiction, a single contract with an out-of-state party is even less likely to satisfy the stringent general jurisdiction requirement of continuous and systematic contacts.  Regarding general jurisdiction contacts, the Seventh Circuit cautions that:

> [C]ontacts must be so extensive to be tantamount to [the defendant's] being constructively present in the state to such a degree that it would be fundamentally fair to require it to answer in an Indiana court in *any* litigation arising out of *any* transaction or occurrence taking place *anywhere* in the world.   [emphasis in original]

Purdue Research Foundation, 338 F.3 at 787.

15

In Purdue Research Foundation, *supra*, multiple confidentiality agreements existed between the parties in addition to a number of visits to Indiana in furtherance of the agreements but those contacts were nonetheless determined to be insufficient to satisfy the demanding standards set by the Supreme Court in Helicopteros.  Similarly, we conclude that the single, unrelated nondisclosure agreement dating from 1998 is insufficient as a basis for general jurisdiction over Timken in this action.

### B.  Specific Jurisdiction Analysis

Rolls-Royce has provided no evidence that Timken was involved in the events giving rise to this suit, which omission substantially undermines their effort to establish specific jurisdiction.[11]  Rolls-Royce asks us instead to defer ruling on this motion until Timken has supplied "adequate discovery responses" to allow Rolls-Royce to ascertain whether Timken is a proper defendant.  Pl.'s Resp. at 11.  Rolls-Royce repeatedly has stated that it intends to dismiss Timken voluntarily if, after receiving discovery from Timken, it is clear that Timken should not be involved in this suit.  Id. at 8; Pl.'s Ex. J: Letters to Timken's Counsel.  The docket reflects that on December 12, 2004, we granted Rolls-Royce's Motion for Leave to Take Expedited Discovery "relating to organizational structure between Timken and Timken-Alcor and the structure of the transaction by

---

[11]  In fact, Rolls-Royce's complaint does not include a single allegation solely against Timken; every reference is stated in terms of Timken "and/or" one or both of the other defendants.  In its Brief in Response to Timken's Motion to Dismiss, Rolls-Royce admits that it has named all three defendants – Alcor, Timken-Alcor, and Timken – because of its uncertainty as to who precisely was responsible for the alleged misappropriation of trade secrets.  See Resp. to Mot. to Dismiss at 1-2.

16

which Timken-Alcor purports to acquire Alcor."[12]   Rolls-Royce has voiced continued protests over Timken's refusal to provide full responses to its far-reaching discovery requests but has never moved to compel Timken to respond to its still unanswered requests.

Further, despite receiving expedited discovery, Rolls-Royce has yet to cite to any evidence garnered in that context that indicates Timken was involved in the events giving rise to this suit.  Without such a prima facie showing, we must conclude that Rolls-Royce is not entitled to further, expanded discovery in an apparent last-ditch effort to unearth something connecting Timken to the claims in this proceeding.  Protracted, preliminary discovery "undermine[s] the purposes of personal jurisdiction law in the first place."  Ellis v. Fortune Seas, Ltd., 175 F.R.D. 308, 312 (S.D. Ind. 1997).[13]  There is no legal basis to subject Timken to specific personal jurisdiction in Indiana with regard to the claims in this suit.

_____

[12]  In its Brief in Support of its Motion to Dismiss, Timken has noted that Rolls-Royce failed to name MPB, the parent company of Timken-Alcor.  Brief in Supp. of Mot. to Dismiss at 2.  Further, Rolls-Royce nowhere contends that we should pierce the corporate veil to hold Timken liable for the acts of either MPB or Timken-Alcor.  See Steven v. Roscoe Turner Aeronautical Corp., 324 F.2d 157 (7th Cir. 1963) (discussing circumstances when a parent may be liable for the acts of a subsidiary).

[13]  In Ellis, Judge Hamilton of our court denied the plaintiff's motion to compel which sought to have the court require the defendant to respond to further discovery requests in search of relevant contacts with the state.  "Where a plaintiff wants to subject a distant defendant to discovery in order to determine whether sufficient contacts support jurisdiction, it is reasonable for a court exercising its power under Rule 26(b)(2) to expect the plaintiff to show a colorable basis for jurisdiction before subjecting the defendant to intrusive and burdensome discovery in that distant forum."  Ellis, 175 F.R.D. at 312.

## Conclusion

For the reasons explained above, we GRANT Timken's Motion to Dismiss for

lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2).  IT IS SO ORDERED.


Date:   August 5, 2005
_____                    _____
                                             SARAH EVANS BARKER, JUDGE
                                             United States District Court
                                             Southern District of Indiana

Copy to:

Michael Paul Bishop
DREWRY SIMMONS VORNEHM, LLP
mbishop@drewrysimmons.com

Timothy L. Buckley
tbuckley@buckleyjacobs.com

John A. Burlingame
SQUIRES SANDERS & DEMPSEY LLP
jburlingame@ssd.com

Max W. Hittle Jr.
KRIEG DEVAULT, LLP
mhittle@kdlegal.com

Douglas B. King
WOODEN & MCLAUGHLIN LLP
dking@woodmaclaw.com

Andrea L. Marconi
SQUIRE SANDERS & DEMPSEY LLP
amarconi@ssd.com

Edward A. McConwell
ed@mcconwell.com

Marc T. Quigley
KRIEG DEVAULT
mquigley@kdlegal.com

Mark Riera
SHEPPARD MULLIN et al.
333 South Hope Street
48th Floor
Los Angeles, CA 90071

James William Satola
SQUIRE SANDERS & DEMPSEY LLP
jsatola@ssd.com

Alastair J. Warr
KRIEG DEVAULT
awarr@kdlegal.com