UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| ROLLS-ROYCE CORPORATION, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:04-CV-0968-SEB-JMS |
| | ) | |
| ALCOR ENGINE COMPANY, INC., et. al. | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**ENTRY DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE
SUPPLEMENTAL RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTIONS TO DISMISS
AND GRANTING DEFENDANTS' MOTIONS TO DISMISS
FIRST AMENDED COMPLAINT[1]**

Before the court is the Motion to Dismiss First Amended Complaint refiled by

Hye-Tech Manufacturing, LLC ("Hye-Tech") [Docket No. 287] and the Motion to

Dismiss refiled by H.E.R.O.S., Inc. and Heros Kajberouni (collectively "Heros, et al.").

[Docket No. 291].  The refiling of these motions is consistent with Magistrate Judge

Shields' Entry of March 21, 2006, following the settlement agreement reached between

---

[1] In addition, this motion renders moot Plaintiff's Motion for Sanctions [Docket No. 310] and
Plaintiff's Motion to Strike Defendant's Opposition to the Motion for Sanctions [Docket No.
331].

Plaintiff and certain co-defendants [See Entry at Docket No. 278].  Subsequent to the filing of these motions, Rolls-Royce filed its Motion for Leave to File Supplemental Response in Opposition to Defendants' Motions to Dismiss [Docket No. 352].

Both of these fully briefed motions to dismiss are brought pursuant to Rules 12(b)(2) and (6) of the Federal Rules of Civil Procedure alleging defects in personal jurisdiction.  In addition, Hye-Tech moves to dismiss Counts II and III, pursuant to Rules 15 and 12(b)(6), arguing that the civil RICO fraud claims alleged in these counts were not plead with particularity as required by Rule 9(b).

## FACTUAL BACKGROUND

Over the past several decades, Rolls-Royce researched, developed, manufactured, and sold to civilian and military customers several versions of its Model 250 aircraft engine, including individual parts and components for those series of engines.  Rolls-Royce First Amended Complaint at ¶21 [Docket No. 259].  In order to obtain approval to sell its engine series and replacement parts to the U.S. Army and the Federal Aviation Administration ("FAA") and the U.S. Army, Rolls-Royce submitted technical drawings and engineering specifications to each.  Id. at ¶¶22-23.  The FAA and the U.S. Army provide regulatory procedures for entities other than original equipment manufacturers such as Rolls-Royce to obtain approval to manufacture and sell imitation parts to compete with parts of original equipment manufacturers.  Id. at ¶27.  Such approval from the U.S. Army is called "Source Approval Request"  ("SAR") and FAA approval is called Parts Manufacturer Approval ("PMA").  Id.  Rolls-Royce contends that Heros et al. and Hye-

2

Tech have participated in a broader scheme with other defendants to knowingly and/or intentionally exert unauthorized control over Rolls-Royce's Design Data with the intent to deprive Rolls-Royce of the value or use of that Design Data and to profit from using it as a basis for PMA, SAR and/or FAA-approved part repair activities. Id. at ¶56.

On March 3, 2006, Rolls-Royce's First Amended Complaint was filed. On June 19, 2006, Heros et al. and Hye-Tech re-filed motions to dismiss the First Amended Complaint on June 19, 2006. In response, Rolls-Royce asserts that all Defendants have established the minimum contacts necessary for personal jurisdiction and, in any event, the RICO statute and Federal Rules of Civil Procedure Rule 4(k)(1)(D) provide personal jurisdiction. In addition, Rolls-Royce asserts that Hye-Tech waived its defense of lack of personal jurisdiction by filing its permissive counterclaim. Rolls-Royce Resp. at 1 [Docket No. 299].

A.  *Heros et al.*

Heros Kajberouni is a citizen and resident of California, and does not do business, pay taxes or own property in Indiana. Memo in Supp. of Heros, Kajberouni Refiled Motion to Dismiss at 3-4. [Docket No. 290]. He has not been in Indiana since approximately 1985 when he attended a conference. Id.

Heros Kajberouni is the president and chief operating officer of H.E.R.O.S., Inc., ("H.E.R.O.S."), a corporation wholly owned by Heros Kajberouni and his spouse. Id. H.E.R.O.S., an FAA Certified Repair Station, was created in 1988, is incorporated in California and its sole offices are located in Glendale, California. Id. H.E.R.O.S. has no

office, employees, property or bank accounts in Indiana.  Id.  Heros Kajberouni reports

that H.E.R.O.S. does not solicit sales or do business in Indiana and a record search of the

company's documents found no sales in Indiana.  However, there is a "recollection of a

single instance of testing an Argotec fuel pump for an Indiana owner in 2005."  Id.

H.E.R.O.S. maintains a website containing generic information about H.E.R.O.S.  Id.

This website is passive in that it does not allow orders to be placed or a contract made.

Id.

     H.E.R.O.S.'s sole contacts with Indiana consist of FAA required training for two

employees conducted at the Rolls-Royce maintenance school in approximately 2000 and

again in August 2005; and the purchase of parts from Allison Engine Company in the

1992-1995 time frame.  Id.

     Heros Kajberouni states that neither he nor H.E.R.O.S. has purposefully-

established contacts within Indiana that concern or relate to the alleged Rolls-Royce

design data.  Id.

    B.  *Hye-Tech*

     Hye-Tech is a California limited liability company formed in 1999 engaged in the

business of manufacturing Federal Aviation Administration ("FAA") approved Part

Manufacturing Approval ("PMA") aftermarket replacement parts for Honeywell, Pratt &

Whitney, Lycoming, Rolls-Royce, Argo-Tech and General Electric engines.  Hye-Tech

Refiled Memo in Supp. at 4-5 [Docket No. 288], citing Heros Kajberouni Declaration

dated March 17, 2006, Exh. 1.  Hye-Tech is owned by Heros Kajberouni, Anahid

Kajberouni, Meghedi Kaberouni and Armen Kaberouni.  Id.  Heros Kaberouni is

president and chief operating officer.  Id.  Hye-Tech's sole offices are located in

Glendale, California and it has no office, employees, property or bank accounts in

Indiana.  Id.  It does not solicit sales or do business in Indiana, but admits purchasing split

seals (6870736HT, 6870737HT and 6889096HT) manufactured by Cook Airtomic for

Hye-Tech pursuant to its PMAs for the parts.  Id.  Cook Airtomic is an independent

contractor and Hye-Tech owns no interest in the company.  Id.  A records search of Hye-

Tech found no sales in Indiana, and Hye-Tech maintains a passive website, which

contains generic information about Hye-Tech, but no orders can be placed or contract

made on such website.  Id.  Heros Kajberouni states that Hye-Tech has not purposefully

established contacts within Indiana that concern or relate to the alleged Rolls-Royce

design data.  Id.


## LEGAL ANALYSIS

I.    **Rolls-Royce's Motion for Leave to File Supplemental Response**

In support of its motion to file a supplemental response in opposition to

Defendants' Motion to Dismiss, Rolls-Royce asserts that Hye-Tech recently served

Requests for Admission of Fact, Interrogatories, and Request for Production of

Documents on behalf of Heros, Inc. and Heros Kajberouni and that "[c]ase law from this

Circuit provides authority for the proposition that Defendants' participation in the

discovery process by affirmatively serving their own Discovery Requests supports Rolls-

Royce's arguments that Defendants are subject to personal jurisdiction in Indiana."
Rolls-Royce Motion for Leave to File Supp. Resp. in Opp. at 2 [Docket No. 352].

In this case, the defendants' participation in discovery and appearances at conferences scheduled by the magistrate judge do not provide evidence of their consent to the jurisdiction of this court. H.E.R.O.S., Inc. and Heros Kajberouni have consistently asserted their objection to jurisdiction and they specifically sought a stay of the case pending a ruling on this motion to dismiss [Docket 233]. While the Court denied that stay, a subsequent stay was entered (Docket No. 256) and a scheduling order imposed on July 19, 2006 (Docket No. 306). Since that time, Defendants contend that they have only responded to discovery initiated by Rolls-Royce because they have had no other option. Def. Heros Resp. to Rolls-Royce's Motion for Leave at 1-2 [Docket No. 360]. Because we denied Defendants' request for a stay pending the resolution of this motion to dismiss, their compliance with our prior order should not in fairness be a factor in our consideration of the pending motion, and thus it will not be. Plaintiff's Motion for Leave to File Supplemental Response in Opposition to Defendants' Motions to Dismiss is DENIED.

## II.   Motions to Dismiss

Both Heros et al. and Hye-Tech request a dismissal of Rolls-Royce's complaint against Defendants for lack of personal jurisdiction, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Additionally, Hye-Tech moves to dismiss Counts II

and III, pursuant to Rule 12(b)(6), arguing that the civil RICO fraud claims alleged in these counts were not pled with particularity, as required by Rule 9(b).

Because the substantive claims bear on the issue of personal jurisdiction over Heros et al. and Hye Tech, we shall proceed, first, with a discussion of the sufficiency of the RICO claims by Rolls Royce.

A.    *Alleged Defective Pleading of RICO Claims*

1.    *RICO and Rule 9(b) Standards*

Plaintiff asserts nationwide jurisdiction over both Heros et al. and Hye-Tech by making a claim under RICO subsection 1962(c) that prohibits a person from conducting the affairs of an enterprise through a pattern of racketeering.  RICO "does not cover all instances of wrong-doing.  Rather it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity."  Gamboa v. Velez, 457 F.3d 703, 705 (7th Cir. 2006).  Specifically, a private claim under 18 U.S.C. §1962(c) has the following four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  Id. ; see Sedima v. Imrex Co., 473 U.S. 479, 496 (1985).  The plaintiff "must . . . allege each of these elements to state a claim."  Id., citing Sedima 473 U.S. at 496.

Rule 9(b) of the Federal Rules of Civil Procedure ("Rule 9(b)") establishes a high standard of particularity in pleading matters of fraud which is applicable "to civil RICO fraud claims."  Edwards v. Marin Park, Inc., 356 F.3d 1058, 1065-66 (9th Cir. 2004).  Specifically, Rule 9(b) "requires the plaintiff to state 'with particularity' any

7

'circumstances constituting fraud'. . . .  This means the who, what, when, where, and how: the first paragraph of any newspaper story." <u>DiLeo v. Ernst & Young</u>, 901 F.2d 624, 627 (7th Cir. 1990).

    2.    *Analysis*

Hye-Tech alleges that Rolls-Royce has failed to plead with particularity the "enterprise" and "conduct" elements of its RICO claim.  If any of the RICO elements are not adequately alleged, Rolls-Royce's claim must dismissed.

A RICO enterprise is "more than a group of people who get together to commit a 'pattern of racketeering activity'." <u>Stachon v. United Consumers Club</u>, 229 F.3d 673, 675 (7th Cir. 2000), quoting <u>Richmond v. Nationwide Cassel L.P.</u>, 52 F.3d 640, 645 (7th Cir. 1995).  The enterprise must be characterized by "an ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision making." <u>Id.</u>, quoting <u>Jennings v. Emry</u>, 910 F.2d 1434, 1440 (7th Cir. 1990) (citations omitted).  Further, "there must be 'an organization with a structure and goals separate from the predicate acts themselves'." <u>Id.</u>, quoting <u>United States v. Masters</u>, 924 F.2d 1362, 1367 (7th Cir. 1991).  The Supreme Court has affirmed that RICO liability requires the plaintiff to allege and prove the "enterprise" is an entity distinct from the "person." <u>Cedric Kushner Promotions, Ltd. v. King</u>, 533 U.S. 158, 161 (2001).

Rolls-Royce asserts that its RICO claim against Hye-Tech, alleging a predicate act of mail fraud, has met the demands of Rule 9(b).  Rolls-Royce relies on several

statements made in its First Amended Complaint in support of this assertion: "Rain, Paramount, Alcor, Heros, Hye-Tech and Kajberouni have for years conspired to obtain Rolls-Royce Design Data to obtain government approval to manufacture and sell replacement parts for the Model 250 series of aircraft engines." (Rolls-Royce First Amended Complaint at ¶65. [Docket No. 259]) Defendants engaged in this scheme to promote the expansion of the Parts Manufacturer Approval ("PMA") market and divert customers away from Rolls-Royce over the course of a 9-year period beginning in 1997. (Id. at ¶¶ 86, 94). Among other things, Defendants relied on the U.S. mails or other common carriers to submit fraudulent Source Approval Requests ("SAR") to the Army and further their scheme to expand the PMA/SAR market and to divert customers away from Rolls-Royce (Id. ¶¶ 94-95). In addition, Rain, Paramount or Alcor knowingly and intentionally mailed or caused to be mailed data packages to the Army containing misrepresentations as to their self-proclaimed right to use proprietary Rolls-Royce Design Data with the intent to induce the Army to approve the SARs. (Id. ¶ 97). Rolls-Royce further claims that, though the First Amended Complaint does not state that Hye-Tech mailed any fraudulent SARs to the Army, the submission of SAR data packages was a foreseeable and necessary component of Defendants' overall scheme. R.E. Davis Chemical Corp. v. Nalco Chemical Co., 757 F. Supp. 1499, 1513 (N.D. Ill. 1990) (noting that individual who participated in scheme to defraud need not have personally mailed document which supplies basis for liability under mail fraud statute in order to be held accountable, if use of mails in connection with scheme was known or reasonably

9

foreseeable); <u>Balabanos v. North American Investment Group</u>, 708 F. Supp. 1488, 1493-94 (N.D. Ill. 1988) (stating that federal courts have construed mail fraud statute broadly and held that it is satisfied as long as mailing is foreseeable; concluding that mailings to the IRS were reasonably foreseeable in tax fraud scheme).

Rolls-Royce cites the rule that a RICO count based on predicate acts of mail fraud meets the particularity requirement of Rule 9(b) if it, "within reason, describe[s] the time, place, and content of the communications, and . . . the parties to those communications." <u>Jepson, Inc. v. Makita Corp.</u>, 34 F.3d 1321, 1328 (7th Cir. 1994). However, this language from <u>Jepson</u> refers to establishing the "pattern of racketeering activity," and does not address the establishment of the RICO "enterprise." <u>Id.</u>, quoting <u>R.E. Davis</u>, 757 F.Supp. at 1516 ("[W]ithout an adequately detailed description of the predicate acts of mail . . . fraud, a complaint does not provide either the defendant or the court with sufficient information to determine whether or not a pattern of racketeering activity has been established.").

Despite these arguments and contentions, Rolls-Royce has not met the high pleading standard required in bringing a RICO claim. The ease with which the elements of a RICO claim are outlined masks the challenge of stating a claim that meets the particularity requirements of Rule 9(b). The purpose of Rule 9(b)'s heightened particularity requirement is not "to give the defendant . . . enough information to prepare his defense." <u>Ackerman v Northwestern Mut. Life Ins. Co.</u>, 172 F.3d 467, 469 (7th Cir. 1999). Rather, "[g]reater precomplaint investigation is warranted in fraud cases because

10

public charges of fraud can do great harm to the reputation of a business firm or other enterprise."  <u>Id.</u>  Accordingly, Rule 9(b) "requires the plaintiff to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate."  <u>Id.</u>  Rolls-Royce has certainly alleged wrong-doing on the part of Hye-Tech and the other defendants and has alleged that Defendants "have worked cooperatively together, collaborated together, and engaged in business transaction."  Rolls-Royce First Amended Complaint at ¶82.  [Docket No. 259].  However, as Hye-Tech maintains, such actions among businesses operating in the same sector are legal and common practices.  Rolls-Royce's allegations do not amount to a claim that a distinct enterprise directs or facilitates the activities of Hye-Tech and the other defendants.  To withstand Hye-Tech's motion to dismiss, Rolls-Royce must "present something more than [a pattern of racketeering activity] and assertions of conspiracy; otherwise, 'every conspiracy to commit fraud that requires more than one person to commit is a RICO organization and consequently every fraud that requires more than one person to commit is a RICO violation'."  <u>Stachon</u>, 229 F.3d at 676, quoting <u>Bachman v. Bear, Stearns & Co.</u>, 178 F.3d 930, 932 (7th Cir. 1999).  Rolls-Royce's allegation that Hye-Tech has participated with the other defendants in a conspiracy to commit fraudulent acts falls short of the mark; more is required to establish a RICO claim.  In substance, Rolls-Royce has failed to sufficiently plead a master RICO enterprise that directs, organizes, develops, or facilitates the fraudulent activities of Hye-Tech and the other defendants.  Accordingly, it has failed to meet its burden of alleging

11

each element of the RICO claim.  Because the claim has not met the particularity

requirements of Rule 9(b), dismissal of Counts II and III is warranted.

B.   *Personal Jurisdiction*

Federal Rule of Civil Procedure 12(b)(2) requires dismissal of a claim where

personal jurisdiction is lacking.  <u>Woodruff v. General Conference of Seventh Day-

Adventist</u>, No. IP 1:03-cv-0183-SEB-VSS (S.D. Ind. July 22, 2004).  When "the

defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2)

for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the

existence of jurisdiction."  <u>Purdue Research Foundation v. Sanofi-Synthelabo, S.A.</u>, 338

F.3d 773, 782 (7th Cir. 2003).  When the district court rules on a defendant's motion to

dismiss based on the submission of written materials, without the benefit of an

evidentiary hearing, the plaintiff "need only make out a prima facie case of personal

jurisdiction" and "is entitled to the resolution in its favor of all disputes concerning

relevant facts presented in the record."  <u>Id.</u> (internal citations omitted).

A federal court based in Indiana has jurisdiction over non-resident defendants in a

diversity case only if an Indiana state court would have jurisdiction.  <u>See</u> Fed. R. Civ. P.

4(e); <u>Lakeside Bridge & Steel v. Mountain State Constr. Co., Inc.</u>, 597 F.2d 596, 598 (7th

Cir. 1979).  Indiana's long-arm statute, Indiana Rule of Trial Procedure 4.4(a) ("Rule

4.4(a)"), dictates whether this matter falls within the jurisdiction of an Indiana court.

Rule 4.4(a) was amended effective January 1, 2003, to add: "In addition, a court of this

state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this

12

state or the United States."  Helpfully, after this motion was fully briefed, the Indiana

Supreme Court issued an explanatory opinion regarding the effect of this amendment,

stating as follows:

> The 2003 amendment to Indiana Trial Rule 4.4(A) was
> intended to, and does, reduce analysis of personal jurisdiction
> to the issue of whether the exercise of personal jurisdiction is
> consistent with the Federal Due Process Clause. Retention of
> the enumerated acts found in Rule 4.4(A) serves as a handy
> checklist of activities that usually support personal
> jurisdiction but does not serve as a limitation on the exercise
> of personal jurisdiction by a court of this state.

LinkAmerica Corp. v. Albert, 857 N.E.2d 961, 967 (Ind. 2006).  Because "Indiana's

'long-arm' jurisdiction now extends to the limit permitted by the Due Process Clause,"

the question before us is whether due process would be offended by requiring Defendants

to answer for their actions in an Indiana court.  Glasscock v. Corliss, 823 N.E.2d 748, 755

n. 4 (Ind. Ct. App. 2005).

　　　　For a court to acquire personal jurisdiction over a defendant, due process requires

"that the defendant have such 'minimum contacts' with the forum state as will make the

assertion of jurisdiction over him consistent with 'traditional notions of fair play and

substantial justice. . . .'"  Lakeside Bridge & Steel Co. v. Mountain State Const. Co., 597

F.2d 596, 600 (7th Cir. 1979), quoting International Shoe v. Washington, 326 U.S. 310,

316, 66 S.Ct. 154, 158 (1945).  In other words, a defendant must have "fair warning that a

particular activity may subject them to the jurisdiction of a foreign sovereign." Burger

King Corp. v. Rudzeqicz, 471 U.S. 462, 472 (1985); quoting Shaffer v. Heitner, 433 U.S.

186, 218 (1977) (Stevens, J., concurring in judgment).

There are two types of personal jurisdiction – specific and general.  A court exercises specific jurisdiction over a defendant where the cause of action arises out of or relates to the defendant's purposefully-established contacts with the forum state. Helicopteros Nacionals de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984); Burger King Corp., 471 U.S. at 472.  "General jurisdiction is proper when a defendant has 'continuous and systematic business contacts' with a state and it allows a defendant to be sued in that state regardless of the subject matter of the lawsuit."  Premiere Credit of North America, LLC v. AAT Fabrication, Inc., 2005 WL 1123636, *2 (S.D. Ind. 2005) (C.J. McKinney), citing Helicopteros, 466 U.S. at 416.

The constitutional requirement for general jurisdiction is "considerably more stringent" than that required for specific jurisdiction.  United States v. Swiss American Bank, Ltd., 274 F.3d 610, 619 (1st Cir. 2001), citing Noonan v. Winston Co., 135 F.3d 85, 93 (1st Cir. 1998); see also ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 623 (4th Cir.1997) ("[T]he threshold level of minimum contacts to confer general jurisdiction is significantly higher than for specific jurisdiction.").  General jurisdiction is permitted only where the defendant has "continuous and systematic general business contacts" with the forum.  See Helicopteros, 466 U.S. at 416 (1984); see also Hyatt Int'l Corp. v. Coco, 302 F.3d 707, 713 (7th Cir.2002); RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1277 (7th Cir.1997). "These contacts must be so extensive to be tantamount to [defendant] being constructively present in the state to such a degree that it would be fundamentally

14

fair to require it to answer in an Indiana court in any litigation arising out of any

transaction or occurrence taking place anywhere in the world." Purdue Research

Foundation v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 787 (7th Cir. 2003).

The due process requirements for specific jurisdiction were recently summarized

by our colleague, Judge Hamilton, in U.S. Schools of Golf, Inc. v. Biltmore Golf, Inc.

> For specific jurisdiction in a case of this type, due process
> requires that a non-resident defendant must have established
> its contacts with the forum state by purposefully availing
> itself of the privilege of conducting business there. This
> purposeful availment requirement ensures that a defendant
> will not be haled into a jurisdiction solely as a result of
> random, fortuitous, or attenuated contacts. In other words, a
> defendant's conduct and connection with the forum state
> should be such that it should reasonably anticipate being
> haled into court there.

2005 WL 3022005, *4 (S.D. Ind. 2005) (J. Hamilton) (internal quotations and citations

omitted).

In addition to general and specific jurisdiction, Federal Rule of Civil Procedure

4(k)(1)(D) ("Rule 4(k)(1)(D)") provides that, when authorized by a federal statute,

service of a summons or filing a waiver of service is effective to establish personal

jurisdiction. Where Congress has statutorily provided for nationwide service of process,

such service establishes personal jurisdiction. See Omni Capital Int'l, Ltd. v. Rudolf

Wolff & Co., 484 U.S. 97, 106-107 (1987); Cory v. Aztec Steel Bldg., Inc., 468 F.3d

1226, 1229-1231 (10th Cir. 2006). Of particular relevance here is the fact that RICO does

authorize nationwide service of process. In re Bridgestone/Firestone, Inc., Tires Products

Liability Litigation, 333 F.3d 763, 768 (7th Cir. 2003), citing 18 U.S.C. § 1965(b); Lisak

v. Mercantile Bancorp, Inc., 834 F.2d 668, 671 (7th Cir. 1987) (noting the federal RICO

statute provides that "in any action under [civil RICO] in any district court of the United

States in which it is shown that the ends of justice require that other parties residing in

any other district be brought before the court, the court may cause such parties to be

summoned, and process for that purpose may be served in any judicial district of the

United States by the marshal thereof." 18 U.S.C. § 1965(b))  In an action invoking federal

question jurisdiction under a statute providing for nationwide service of process, the due

process requirements applicable to the assertion of personal jurisdiction over a defendant

require that the defendant have minimum contacts only with the United States. Lisak, 834

F.2d at 671; Fitzsimmons v. Barton, 589 F.2d 330, 332-34 (7th Cir. 1979) (holding that in

federal securities fraud action where Securities Exchange Act provided for nationwide

service of process, due process only required a showing of minimum contacts with the

United States); Delta Star Electric, Inc. v. Taylor, 1990 WL 293847 *4 (N.D. Ind. 1990)

(where federal RICO claim has been asserted, federal courts apply "national contacts" test

to exercise personal jurisdiction).  In this context, the related component of due process

addressing traditional notions of fair play and substantial justice relates to the "fairness of

the exercise of power by a particular sovereign, [namely the United States], not the

fairness of imposing the burdens of litigating in a distant forum." Fitzsimmons, 589 F.2d

at 333, citing Shaffer v. Heitner, 433 U.S. 186 (1977).

      1.     *Personal Jurisdiction Analysis for Heros et al.*

Rolls-Royce maintains that this court has personal jurisdiction over Heros et al. on two different theories: (1) under RICO's nationwide service of process provision and Rule 4(k)(1)(D) and, (2) under Indiana's long-arm jurisdiction statute, Rule 4.4(a). We address each theory in turn.

a. *Rule 4(k)(1)(D) claim.*

If Rolls-Royce has properly stated a RICO claim, Rule 4(k)(1)(D) authorizes this court to exercise personal jurisdiction over Heros et al. Because RICO authorizes nationwide service of process for establishing personal jurisdiction, Rolls-Royce need only establish that Heros et al. have minimum contacts with the United States in order to satisfy its burden of making a prima facie showing of personal jurisdiction. The facts that Heros Kajberouni is a citizen and resident of California and H.E.R.O.S. is incorporated in California (Heros et al. Refiled Motion to Dismiss at 3 [Docket No. 290]) establish that the defendants have the requisite minimum contacts with the United States. If Rolls-Royce stated a proper RICO claim sufficient to withstand defendant's Rule 12(b)(6) argument, this court would have personal jurisdiction over Heros et al. As established <u>supra</u>, however, Rolls-Royce has not properly pled a RICO claim; accordingly, we lack personal jursidiction over Heros et al.

b. *Indiana's Long-Arm Jurisdiction Statute, Rule 4.4(a)*

Heros et al. contend their contacts with Indiana "are neither purposefully established nor continuous and systematic and therefore insufficient to satisfy the requirements for an exercise of specific personal jurisdiction." Memo in Supp. of Heros,

17

Kajberouni Refiled Motion to Dismiss at 4.  [Docket No. 290].  Having established that the requirements for specific jurisdiction were not met, Defendants assert that the more stringent standard for establishing general jurisdiction has also not been met.  Id.  Rolls-Royce posits that Heros et al. made additional contacts with Indiana that Defendants have neither disclosed nor acknowledged.  Rolls-Royce Resp. To Heros et al. Motion to Stay and Dismiss at 17-18.  [Docket No. 248]; Rolls-Royce Sur-Resp. To Heros et al. Motion to Stay and Dismiss at 3-4.  [Docket No. 261].  Rolls-Royce "is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record."  Purdue Research Foundation, 338 F.3d at 782.

Rolls-Royce contends that Heros et al. exhibited "a consistent pattern of solicitation of business, industry advice, and at times proprietary technical data of Rolls-Royce . . .  directed to [Rolls-Royce's Indiana facility]," (Rolls-Royce Resp. To Heros et al. Motion to Stay and Dismiss at 17.  [Docket No. 248]), including at least 10 communications (facsimiles, emails and letters) in 2005.  Id. at 7-9, ¶¶ 27-40; Rolls-Royce Sur-Resp. To Heros et al. Motion to Stay and Dismiss at 3.  [Docket No. 261]. Rolls-Royce claims the proprietary information that Defendants solicited from them, and which Rolls-Royce refused to provide, overlaps with the data that forms the basis for Rolls-Royce's Complaint.  Rolls-Royce Resp. To Heros et al. Motion to Stay and Dismiss at 17.  [Docket No. 248].  Further, Rolls-Royce characterizes Defendants' contacts as "affirmative and intentional" and "not the result of luck, chance, or accident."  Rolls-Royce Sur-Resp. To Heros et al. Motion to Stay and Dismiss at 4.  [Docket No. 261].

18

To warrant an exercise of personal jurisdiction, Heros et al.'s contacts must be more than just intentional; the contacts must be significant enough to give fair warning that Defendants could be haled into Indiana courts as a result of those contacts. The facsimiles and emails referenced in question here were limited in number, were mostly requests for information that were denied, and were submitted over the course of several years. These communications simply do not meet the minimum contacts standard required for an exercise of specific or general jurisdiction.

Rolls-Royce also argues that Defendant's website establishes contacts sufficient for exercise of personal jurisdiction. This argument likewise is unconvincing. While Plaintiff claims that the website is interactive and conveys the intent to allow for internet product sales and promotion worldwide (Rolls-Royce Resp. To Heros et al. Motion to Stay and Dismiss at 17-18. [Docket No. 248]), there is no evidence the website has been marketed in Indiana or that Defendants have made contacts in Indiana as a result of the website. Rolls-Royce has not disputed Defendants claim of having no prior sales in Indiana. See Memo in Supp. of Heros et al. Refiled Motion to Dismiss at 3-4. [Docket No. 290]. Accordingly, no basis for either either specific or general jurisdiction has been established by way of Heros et al.'s website.

2. *Personal Jurisdiction Analysis for Hye-Tech*

Rolls-Royce also asserts that this court has personal jurisdiction over Hye-Tech on three separate grounds: (1) under RICO's nationwide service of process provision and Rule 4(k)(1)(D); (2) under Indiana's long-arm jurisdiction statute, Rule 4.4(a); and, (3) as

a result of Hye-Tech's filing of a permissive counterclaim.  We address each of these theories in turn below.

      a.  *Rule 4(k)(1)(D) claim.*

If Rolls-Royce were to have properly stated a RICO claim, Rule 4(k)(1)(D) would authorize an exercise of personal jurisdiction by this court over Hye-Tech.  Because RICO authorizes nationwide service of process for establishing personal jurisdiction, Rolls-Royce need only establish that Hye-Tech has minimum contacts with the United States to make out a prima facie basis for personal jurisdiction.  The fact that Hye-Tech is a California limited liability company with sole offices in California (Hye-Tech Refiled Motion to Dismiss at 4 [Docket No. 288]) establishes that the defendant has the requisite minimum contacts with the United States.  If Rolls-Royce's RICO claims were sufficient to withstand defendant's Rule 12(b)(6) argument, this court would have personal jurisdiction over Hye-Tech.  As established, supra, however, Rolls-Royce has not properly pled a RICO claim; accordingly, personal jursidiction over Hye-Tech does not lie in this district.

      b.  *Indiana's Long-Arm Jurisdiction Statute, Rule 4.4(a)*

A review of Hye-Tech's contacts with Indiana do not demonstrate the minimum contacts required to establish personal jurisdiction.  Defendants contend Hye-Tech is incorporated in California, has no office or other property in Indiana, and maintains a passive website from which no orders can be placed or contract made.  Hye-Tech Refiled Motion to Dismiss at 4 [Docket No. 288].  Defendants further contend that Hye-Tech has

no history of sales in Indiana.  <u>Id.</u>  Defendants argue Hye-Tech's only contacts with

Indiana involve the purchase of parts manufactured by Cook Airomatic.  <u>Id.</u>  Rolls-Royce

presents no evidence of any other specific contacts Hye-Tech has had within Indiana.

The instant cause of action does not relate to or arise out of Hye Tech's contacts

regarding the parts purchases.  Accordingly, Defendants have not had fair warning that

they could be haled into an Indiana court.  <u>See</u> <u>Helicopteros</u>, 466 U.S. at 414.  Rolls-

Royce has neither referenced nor provided any evidence to establish that Hye-Tech's

contacts with Indiana are the type of "continuous and systematic general business

contacts" that give rise to general jurisdiction.  <u>See</u> <u>Id.</u> at 416.

   However, Rolls-Royce has called upon the "effects doctrine" to assert that

Defendants' actions had an impact within Indiana sufficient to justify this court's exercise

of personal jurisdiction.  <u>See</u> <u>Int'l Molding Machine Co. V. St. Louis Conveyor Co.</u>, 2002

WL 1838130, *4 (N.D. Ill.), citing <u>Calder v. Jones</u>, 465 U.S. 783, 789-90 (1984).  Under

this doctrine, the exercise of specific jurisdiction is appropriate "when a defendant aims

intentional, tortious actions at the forum state which harm a plaintiff in the forum state

and the defendant knows that the plaintiff would be likely to suffer harm there."  <u>Id.</u>  In

support of its assertion that Hye-Tech's actions have had such effects in Indiana, Rolls-

Royce generally alleges that Hye-Tech and the other defendants have engaged in a

scheme to misappropriate Rolls-Royce's proprietary data, and that Hye-Tech knew that

its wrongful conduct would affect Rolls-Royce's Indiana interests.  Rolls-Royce's Brief

in Opposition to Hye-Tech's Motion to Dismiss at 9-10 [Docket No. 280].  Additionally,

21

Rolls-Royce avers (albeit in a footnote) that Hye-Tech and Hero et al. are alter egos of one another--that is having the same owners, same principals, and same business address; as such, Hero Kajberouni's contacts with Rolls-Royce in Indiana should be imputed to Hye-Tech. Id. at 10, n.4.  Even under the effects doctrine, "[e]ach defendant's contacts with the forum State must be assessed individually."  Calder, 465 U.S. at 790.  See Rush v. Savchuck, 444 U.S. 320, 332 (1980) ("The requirements of *International Shoe* . . . must be met as to each defendant over whom a state court exercises jurisdiction.")  Beyond the general assertion of Hye-Tech's involvement in a broader scheme, Rolls-Royce has not put forth an argument demonstrating Hye-Tech's more narrowly drawn contacts with Indiana.  Having failed to establish Hye-Tech's minimum contacts with Indiana, Rolls-Royce's efforts to establish a prima facie case for this court's exercise of personal jurisdiction over Hye-Tech also fail and a dismissal of the claims against these defendants is required.

   c. *Permissive Counterclaim*

Rolls-Royce lastly contends that, on June 28, 2006, Hye-Tech filed its Answer to Amended Complaint and Counter-Claim which includes eight separate counts, including Indiana state law claims and federal claims and factual allegations dating back to the 1950's. [Docket No. 296.]  According to Rolls-Royce, because Hye-Tech's Counterclaim contains permissive counterclaims under Federal Rules of Procedure 13(b)[2], Hye-Tech

---

[2]  The counterclaims are permissive under Rule 13(b), according to Rolls-Royce, because the factual allegations contained in Hye-Tech's Counterclaim predate Hye-Tech's formation as a

has invoked the personal jurisdiction of this Court, which action it took voluntarily prior to our ruling on Hye-Tech's Motion to Dismiss.  Rolls-Royce Resp. at 2, citing Hotmix & Bituminous Equipment Inc. v. Hardrock Equipment Corp., 719 N.E.2d 824, 830 (Ind. Ct. App. 1999) (stating that objection to personal jurisdiction is waived where a defendant seeks affirmative relief in the form of a permissive counterclaim).

Federal Rule of Civil Procedure 12(h)(1) ("Rule 12(h)(1)") is implicated in considering waiver of the defense of lack of personal jurisdiction.  Under Rule 12(h)(1), the defense of lack of personal jurisdiction is waived if it is omitted from a consolidated motion or if the defense is not asserted by motion or pleading.  As long as the requirements of Rule 12(h)(1) are met, filing of a permissive or compulsory counterclaim cannot waive a party's objection to personal jurisdiction.  Rates Technology Inc. v. Nortel Networks Corp., 399 F.3d 1302, 1308 (Fed. Cir. 2005).  "Holding to the contrary would effectively eliminate the unqualified right provided by Rule 12(b) of raising jurisdictional defenses either by motion or answer."  Id.  In Neifeld v. Steinberg, the Third Circuit stated:

> If we were to take the position that a defendant, by raising his jurisdictional defenses in the same pleading in which he asserted a counterclaim, waived his jurisdictional defenses, we would in effect be engrafting a judicial exception to

limited liability company under California law (January 1999) and the receipt of its first Part Manufacturer Approval in July 2000, and necessarily extend well beyond the scope of the transactions set forth in the First Amended Complaint and thus Hye-Tech's permissive Counterclaim cannot arise from the same transaction or occurrence giving rise to Rolls-Royce's First Amended Complaint.  Rolls-Royce Resp. at 2.

> Rule 12(b).  We would be requiring a defendant to raise
> his jurisdictional defenses by motion when he intends to
> file a counterclaim in his responsive pleading.  This
> requirement would be contrary to the option provided to
> the defendant in Rule 12(b).

Neifeld v. Steinberg, 438 F.2d 423, 428-29 (3d Cir. 1971).  This interpretation is shared

by several circuits.  See, e.g., Bayou Steel Corp. v. M/V Amstelvoorn, 809 F.2d 1147,

1149 (5th Cir. 1987) ("We now adopt what we consider to be the better reasoned and

prevailing view, and hold that the filing of a counter-claim, cross-claim, or third-party

demand does not operate as a waiver of an objection to jurisdiction, whether that

objection is raised by motion or answer, provided that the objection is not otherwise

waived in the course of the litigation."); Gates Learjet Corp. v. Jensen, 743 F.2d 1325,

1330 (9th Cir. 1984) (Rule 12(b) "implicitly authorizes a defendant to join a jurisdictional

defense with a counterclaim without waiving this defense."); Chase v. Pan-Pac. Broad.,

Inc., 750 F.2d 131, 132 (D.C. Cir. 1984) ("The holding that a defendant may not state in

an answer both a jurisdictional defense and a counterclaim is inconsistent with the design

and purpose of the pleading prescriptions set out in the Federal Rules of Civil

Procedure.")

The scope of Hye-Tech's counterclaims is not unrelated to the subject matter of

the instant action.  Hye-Tech's claims allege that, as a result of monopolistic actions on

the part of Rolls-Royce, "competition has been injured or destroyed and Hye-Tech has

been unable to compete on a fair and even basis with Rolls-Royce in the sale of

aftermarket parts of Rolls-Royce Model 250/T-63 engines."  Hye-Tech's Answer to First

Amended Complaint and Counterclaim  at ¶280. [Docket No. 296].  Rolls-Royce's First

Amended Complaint alleges that Hye-Tech and other defendants "have for years

conspired to obtain Rolls-Royce Design Data and to use that Design Data to obtain

government approval to manufacture and sell replacement parts for the Model 250 series

of aircraft engines."  Rolls-Royce First Amended Complaint at ¶65. [Docket No. 259].  A

claim that "arises out of the transaction or occurence that is the subject matter of the

opposing party's claim" is a compulsory counterclaim.  Federal Rules of Civil Procedure

Rule 13(a).  "[T]he filing of a compulsory counterclaim does not waive the defense of

lack of personal jurisdiction where it is filed contemporaneously with an answer which

properly raises personal jurisdiction as an issue."   Hotmix & Bituminous Equipment Inc.,

719 N.E.2d at 830.

Hye-Tech has consistently asserted as a defense the lack of personal jurisdiction.

The defense was raised in Hye-Tech's original Motion to Dismiss Rolls-Royce's First

Amended Complaint [Docket No. 271], in Hye-Tech's re-filed Motion to Dismiss [Docket

No. 288], and then in Hye-Tech's Answer to the First Amended Complaint [Docket No.

296].  The consistency of this defense satisfies the requirements of Rule 12(h)(1) and we

hold accordingly that Hye-Tech's objection to personal jurisdiction has not been waived,

notwithstanding Hye-Tech's counterclaims.  The submission of counterclaims--

permissive or compulsory--does not confer personal jurisdiction over Hye-Tech in this

district.

**Plaintiff's Motion for Sanctions and Plaintiff's Motion to Strike**

With this Court's dismissal of Rolls-Royce's claims against Hye-Tech, the following pending motions filed by Rolls-Royce are denied as moot:

Docket No. 310.  Plaintiff's Motion for Sanctions

Docket No. 331.  Plaintiff's Motion to Strike Defendant's Opposition to the Motion for Sanctions.

Having found no basis for the exercise of personal jurisdiction over Defendant, the Defendant's Counterclaims which are the basis for these motions are moot.  Accordingly, the motions are <u>DENIED</u> as moot.

## CONCLUSION

For the foregoing reasons, Rolls-Royce's Motion for Leave to File Supplemental Response is <u>DENIED</u>.  Heros et al.'s Motion to Dismiss is <u>GRANTED</u>.  Hye-Tech's Motion to Dismiss is <u>GRANTED</u>.  In addition, Plaintiff's Motion for Sanctions

and Motion to Strike Defendant's Opposition to the Motion for Sanctions is <u>DENIED</u> as moot.  IT IS SO ORDERED.

Date:    03/29/2007

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

26

Copies to:

Rebecca Biller Elmore
KRIEG DEVAULT
relmore@kdlegal.com

Max W. Hittle Jr.
KRIEG DEVAULT, LLP
mhittle@kdlegal.com

Jeremy Byan Johnson
WOODEN & MCLAUGHLIN LLP
dking@woodmaclaw.com

Douglas B. King
WOODEN & MCLAUGHLIN LLP
dking@woodmaclaw.com

Edward A. McConwell Sr.
ed@mcconwell.com

Marc T. Quigley
KRIEG DEVAULT
mquigley@kdlegal.com

Mark  Riera
SHEPPARD MULLIN et al.
333 South Hope Street
48th Floor
Los Angeles, CA 90071

Alastair J. Warr
KRIEG DEVAULT
awarr@kdlegal.com

Jill E. Zengler
UNITED STATES ATTORNEY'S OFFICE
jill.zengler@usdoj.gov