UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ROLLS-ROYCE CORPORATION, ) | |
|     Plaintiff, ) | |
| ) | |
|     vs. ) | 1:04-cv-0968-SEB-JMS |
| ) | |
| ALCOR ENGINE COMPANY, INC. et al, ) | |
|     Defendant. ) | |

## ENTRY ON PENDING MOTIONS

This cause is before us on Defendants', Paramount International and David Rain,[1] Motion for Expedited Emergency Enforcement and/or Clarification of Settlement Agreement (Dkt. # 394) and Plaintiff's Cross Motion to Enforce Confidential Settlement Agreement (Dkt. # 402). The motions are fully briefed, and being duly advised, we **GRANT IN PART AND DENY IN PART** Defendants' motion, and **GRANT IN PART AND DENY IN PART** Plaintiff's motion, for the reasons and to the extent set forth below.

## I. Background

This litigation involves Plaintiff Rolls-Royce's ("Rolls-Royce") allegations of Lanham Act violations and misappropriation of trade secrets as well as other causes of action against various defendants arising from Rolls-Royce's production of Model 250 helicopter engines and replacement parts for the United States military. Most defendants have now settled, including the defendants currently before the Court: Paramount International ("Paramount"), David Rain

---

[1] For reasons unknown to us the initial motion for enforcement (Dkt. # 394) was brought only on behalf of Rain and Paramount without reference to Alcor. However, Rolls-Royce's cross motion was brought against all three defendants.

("Rain"), and Alcor Engine Company, Inc.[2] ("Alcor").  These Defendants entered into settlement agreements with Rolls-Royce on May 19, 2006.  Three other defendants, Hye-Tech Manufacturing, LLC, HEROS, Inc., and Heros Kajberouni (collectively "HEROS"), moved to dismiss Plaintiff's claims for lack of jurisdiction, and the Court granted that motion on March 29, 2007.  Subsequently, the claims against HEROS were refiled by Rolls-Royce in the Northern District of Texas, Cause no. 3-07-cv-0739-R.  This is not the first instance in which Paramount, Rain and Alcor have had "disputes" with Rolls-Royce regarding the terms of their settlement agreement (See Dkt. #'s 383, 384 and 1:07-cv-1233-SEB-JMS).

**II. Defendants' Motion for Enforcement and/or Clarification of Settlement Agreement and Rolls-Royce's Cross-Motion for Enforcement of Settlement Agreement**

Defendants', Paramount International and David Rain (hereinafter referred to collectively as "Defendants"), Motion for Enforcement and/or Clarification of Settlement Agreement originally presented three issues for resolution.  The first issue regarding a joint public statement was resolved on an expedited basis and no longer pends.  (See Dkt. # 405).

Defendants' second request is that we interpret the terms "Parties" and "claims" contained within the settlement agreement phrase "resolution of all claims as to all Parties" as set out in paragraph 7.1 thereof.  They argue that the term "Parties" includes the HEROS defendants and that the term "claims" includes the pending HEROS litigation in Texas.  Therefore, they maintain that they are not obligated to return the documents described in paragraph 7.1 until the conclusion of the HEROS litigation.  In their cross-motion, Rolls-Royce disagrees with

---

[2]Rain is a principal of Paramount as well as a principal and shareholder of Alcor (Complaint, ¶ 5-6).  Rain executed the settlement agreement at issue on behalf of all three defendants.  In April 2004, Alcor sold substantially all of its assets to Timken-Alcor Aerospace Technologies, Inc. ("Timken"). (Complaint, ¶ 6).  Timken was also a defendant in this cause and settled with Rolls-Royce on December 9, 2005. (Dkt. # 226).

Defendants' interpretations of those terms and seeks return of all discovery described in paragraph 7.1.

In their third request, Defendants seek enforcement of the portion of the parties' settlement agreement requiring Rolls-Royce to return to them copies of all drawings and other technical information listed in Schedule 1.1 of the settlement agreement as contained on CDs turned over to Rolls-Royce.

In its cross-motion, Rolls-Royce also seeks enforcement of paragraph 1.3 of the settlement agreement in the form of an order to Defendants to return all Rolls-Royce technology in their possession. This request specifically concerns a box of documents (the "box") located in a storage unit that was discovered by counsel for Defendants in September 2007. The box purportedly contains "Technology," as defined by the settlement agreement, which Defendants would have been required to return to Rolls-Royce pursuant to paragraph 1.3 of the settlement agreement had the existence of these materials been known at the time the settlement agreement was entered.

**A.  Meaning of "Parties" and "claims":**

Counsel for Defendants in the case at bar also represents HEROS in the ongoing litigation in the Northern District of Texas. In addition, he represents AvidAir in a similar case filed by Rolls-Royce in the Western District of Missouri (Case no. 4:06-cv-0816-W-ODS). Defendants represent that many of the documents produced in our case by Rolls-Royce (approximately 35,000, according to Defendants) as well as depositions taken are relevant and discoverable in the HEROS and AvidAir causes. Thus, counsel for Defendants asserts that he is not obligated to return or destroy documents from this litigation still in his possession because "claims" against the "parties" are still being pursued against HEROS.

Paragraph 7.1 of the parties' settlement agreement states:

> Within sixty (60) days after the resolution of all claims as to all Parties, Alcor, Rain, and Paramount, and their counsel will return to Krieg DeVault LLP all documents containing information designated as "confidential" or "attorneys' eyes only" by Rolls-Royce, including without limitation all discovery answers and deposition transcripts. With respect to Electronic Data or Electronic Media, the originals and all copies of media shall be returned along with a written certification that all such copies have been deleted and scrubbed from all computers.

Defendants assert that the term "Parties," as used in the settlement agreement, includes the HEROS defendants, an assertion with which Rolls-Royce vigorously disagrees. Because the claims against HEROS remain unresolved, Defendants argue, they are not yet required to return the above described documents.[3]

The settlement agreement specifically defines the "Parties" as "Alcor, Rain and Paramount and Rolls-Royce." The HEROS defendants are nowhere mentioned in this definition. Defendants, however, direct us to the term, "Litigation," in the settlement agreement, as it appears in paragraph 3.4 and is defined as "the lawsuit pending in the United States District Court, Southern District of Indiana, Indianapolis, Division, Case No. 1:04-cv-0968-SEB-VSS (now JMS) as consolidated." Paragraph 3.4 provides: "Upon conclusion of the Litigation as to all claims and all parties, the Parties will issue a joint public statement in the form set forth in Schedule 3 attached hereto."

Defendants contend that the phrase "all claims and all parties" as it appears in paragraph 3.4 has a parallel meaning to "all claims as to the Parties," as referred to in paragraph 7.1. While

---

[3]Defendants make passing reference to another issue relating to the return of documents pursuant to paragraph 7.1, namely the "ramifications of Rolls-Royce's practice of over designating documents as "confidential" or "attorney's eyes only." (Dkt. # 406, pg. 1). Those designations were made during the pendency of the case, and could have been challenged at that time (See, e.g., Dkt. #'s 68, 78). We will address this issue no further.

the logic of this argument is not entirely clear, we understand Defendants to argue that the term "Litigation," as defined in the agreement, included all defendants who were a part of the lawsuit at the time of settlement, which included HEROS, given that the Court had not yet granted their motion to dismiss. Thus, Defendants interpret the phrase, "conclusion of the Litigation as to all claims and all parties," in paragraph 3.4 to necessarily include the claims against HEROS. Therefore, the phrase, "all claims as to the Parties," in paragraph 7.1 also includes the claims against HEROS. Since Rolls-Royce subsequently refiled its claims against HEROS in another jurisdiction, all claims against the parties were not resolved, and Defendants obligations pursuant to paragraph 7.1 have not ripened.

However, in our view Defendants' argument is premised on a flawed interpretation of the term "Litigation." They assert that "Litigation" is "defined to include all parties to the consolidated cases." (Dkt. #406, pg. 2). While that term, according to the agreement, necessarily includes all parties to this lawsuit, and thus HEROS, it specifically limits the term "Litigation" to *this lawsuit* (1:04-cv-0968-SEB-JMS) and, at this juncture, all claims against all parties in *this lawsuit* have, in fact, been resolved. Thus, Defendants are obligated, pursuant to the settlement agreement, to return all documents described in paragraph 7.1.[4] Accordingly, Defendants motion with respect to this issue is **DENIED**, and Rolls-Royce's cross-motion is **GRANTED**. Defendants are obligated, absent an agreement in the pending Texas litigation to the contrary, to return all documents described in paragraph 7.1.

---

[4] We did not address either party's arguments regarding the use of this discovery in the HEROS or AvidAir litigation. The only issue before us is enforcement of the settlement agreement in the case at bar, which provides no exceptions for retaining documents for use in other, related litigation. However, pursuant to the AvidAir Court's suggestion that the parties utilize, to the extent possible, discovery from prior cases (See Dkt. # 396, pg. 4), all counsel would be well-served in our view by a "meet and confer" on this issue.

**B. Return of Drawings and Technical Information contained on Schedule 1.1:**

Paragraph 1.3 of the settlement agreement provides that:

> All Rolls-Royce Documents, Electronic Data and Electronic Media in the possession, custody or control of Rain, Alcor or Paramount, regardless of origin, shall be returned to Rolls-Royce.  Rolls-Royce shall then either deliver to Rain part drawings and specifications within the scope of Publicly Available Information or return the originals, as soon as practicable.  With respect to Documents, Electronic Data and Electronic Media, other than part drawings and specifications, Rolls-Royce shall inventory the same and return to Rain as soon as practicable.  If feasible, this may alternatively be achieved by representatives of Rolls-Royce visiting Paramount to perform such inventory.

Defendants complain that while they returned seven CDs to Rolls-Royce for review, Rolls-Royce has failed to fulfill its obligation to return drawings and other technical information within the scope of Publicly Available Information to Defendants.

Rolls-Royce provides several explanations for why they should not have to comply with the terms of the settlement agreement, but no real explanation as to why they have not yet done so.  They claim the information from the CDs sought by Defendants was illegally copied and sold by Aerospace Turbines, Inc. ("ATI").  However, this fact was known to Rolls-Royce at the time the parties entered into the settlement agreement. (See Ex. 6, Dkt. # 403).  Rolls-Royce agreed, with full knowledge of the source of the documents, to return all publicly available information contained on the CDs.

Rolls-Royce further asserts that Defendants already have all of the publicly available information contained on the CDs, and that it would be a "colossal waste of resources" to review the CDs and print copies of the documents to return to Defendants. (Dkt. #403, pg. 16).  Again, the review of the CDs and return of the publicly available documents is an obligation explicitly undertaken by Rolls-Royce at the time it entered into the settlement agreement. Whether or not it is redundant, that is what Rolls-Royce agreed to do.

Rolls-Royce also argues that Defendants cannot enforce the settlement agreement because of their prior material breach (another issue raised by Rolls-Royce's cross-motion, which we have not yet addressed). However, as made clear in our September 19, 2007 entry, while our order approving the settlement and dismissing the claims against Defendants conferred continuing jurisdiction upon this Court to enforce the terms of the settlement agreement, adjudicating the issue of whether a material breach of that agreement has occurred was not within the reach of our order of dismissal. (See Dkt. # 393).

Finally, Rolls-Royce contends that Defendants did not seek informal resolution of this issue prior to filing the instant motion, a contention disputed by Defendants. Without resolving that disagreement, we note that the issue is before us now, and we shall not defer a ruling in hopes that the parties might come to their own, voluntary agreement, which we view as an unlikely scenario.

Plaintiff asserts that it "is before this Court asking, simply enough, that Defendants be held to their agreement. Rolls-Royce satisfied its contractual promises and expects Defendants to do the same." (Dkt. # 403, pg. 6). Despite this assertion, it appears Rolls-Royce has itself failed to comply with the provisions of paragraph 1.3 of the settlement agreement requiring it to return certain publicly available information to Defendants. Its reasons for failing to fulfill its obligations are unavailing because they were known at the time Rolls-Royce agreed to review the data and return the publicly available information. Rolls-Royce cannot successfully raise those issues in after-the-fact-faction in an effort to excuse its own compliance with the agreement. Therefore, Defendants motion is **GRANTED** with respect to enforcement of paragraph 1.3 of the agreement.

**C. The Box:**

Rolls-Royce's final request is that the Court enforce paragraph 1.3 of the settlement agreement by ordering Defendants to return technology in their possession, which is purportedly contained in a box that was discovered in a storage unit in September 2007 by counsel for Defendants.

Defendants claim to have been unaware of the existence of this storage unit and the box contained therein prior to September 2007. Defendants explain that, until August 15, 2007, the storage unit ("the unit") was under the exclusive control of Barry Stonehouse ("Stonehouse"), General Manager of Timken-Alcor Aerospace ("Timken"), although the lease was under the name of Alcor.[5] However, Timken apparently paid rent for the unit through September 7, 2007. In August 2007, when Rain discovered the existence of the unit, a new lease was issued containing Rain's address as the contact point. Rain allegedly has never visited the unit or seen or had access to the box.

A meeting was arranged between counsel for Defendants and counsel for Stonehouse to allow Stonehouse to remove any personal property from the unit. The meeting occurred in mid-September, with Stonehouse, his counsel, counsel for Defendants and Jerry Reno present, at which time the box was discovered. Counsel for Defendants thereafter advised counsel for Timken of the discovery of the box. Timken's counsel apparently voiced no objection to counsel for Defendants with regard to Defendants' maintaining possession of the box.[6]

In January 2008, the box and its contents were marked as exhibits during a deposition

---

[5] Barry Stonehouse was the president of Alcor. Alcor sold most of its assets to Timken in April 2004. At that time, Stonehouse resigned as president of Alcor, and became General Manager of Timken. As noted earlier, the Complaint alleges that Rain is the "principal and shareholder" of Alcor.

[6] While the foregoing information is asserted in Defendants' brief, none of it has been provided to us in the form of admissible evidence.

taken in connection with the AvidAir case (recall that counsel for Defendants is also counsel for AvidAir). The parties agreed that the deposition could be used in the HEROS case as well. Currently, the box reposes with the court reporter who took/transcribed the deposition, and is expected to copy the contents, in that they are exhibits to the deposition, and then return the box to counsel for AvidAir/Defendants. Defense counsel assures that neither Rain nor Paramount will have access to the box. Further, he points out that the box and its contents are now evidence in both the AvidAir and HEROS cases and maintains that he should retain these materials until that litigation is completed, at which time a final determination can be made as to who should possess custody of the box and its contents.

      We are inclined to agree with Defendants. Ownership of the box is entirely unclear. While the unit was leased in Alcor's name, Rain claims to have been unaware of its existence and, in any event, did not pay the rental fee on the unit. The unit was allegedly under the control of Timken and Stonehouse, who did pay the rental fee until September 2007.[7] Most significantly, there is no evidence to establish that the box was in the storage unit on the date the settlement agreement was executed. The terms of the settlement agreement do not impose a continuing obligation upon Defendants to return Rolls-Royce "Technology" to Rolls-Royce if such data is acquired at some point after the execution of the settlement agreement. Rather, the settlement agreement calls for the "return" of such information, implying that Defendants had previously had it in their possession. Indeed, Rolls-Royce asserts that, in agreeing to the settlement, "it sought to achieve dual objectives: (1) secure Defendants' return of all misappropriated Rolls-Royce Technology and (2) obtain a final and complete divorce from

---

[7] See footnote four.

Defendants." (Dkt. # 403, pg. 5).[8]  Continuing obligations in the settlement agreement would have been inconsistent with the second objective.

Based upon the "bizarre circumstances surrounding the lease of the storage unit"(Dkt. # 409, pg. 6), we are unable to determine whether Defendants are obligated to return the box to Rolls-Royce, pursuant to the terms of the settlement agreement.[9]  Because the box and its contents are now evidence in not one, but two, other litigations, we are reluctant to interfere, particularly on the thin showing of entitlement made by Plaintiff.  Therefore, Rolls-Royce's cross-motion with respect to this issue is **DENIED.**

**IV. Conclusion**

Defendants' Motion for Expedited Emergency Enforcement and/or Clarification of Settlement Agreement (Dkt. # 394) is **GRANTED IN PART AND DENIED IN PART.**  Rolls-Royce's Cross-Motion to Enforce Settlement Agreement (Dkt. # 402) is **GRANTED IN PART AND DENIED IN PART.**  Rolls-Royce is **ORDERED** to return (either the originals or copies) to Defendants the drawings and other technical information that are included on Schedule 1.1, contained on the seven CDs returned to Rolls-Royce.  Defendants are **ORDERED** to return to Rolls-Royce all documents containing information designated as confidential or attorney's eyes only by Rolls-Royce, including discovery answers and deposition transcripts, pursuant to paragraph 7.1 of the settlement agreement.  Each party is required to complete this production by

---

[8]Though hardly an area of legal expertise possessed by this Judge, we are aware that settlement agreements in domestic relations cases often provide for continuing obligations, such as maintenance or support payments.  The agreement reached by the parties here does not include  any such continuing obligations, presumably in order to achieve Rolls-Royce's objective of a "final and complete divorce."

[9]Indeed, perhaps it is Timken who is obligated to return the documents pursuant to its settlement agreement with Rolls-Royce.

June 15, 2008.

    Because each party has prevailed on one issue, and the remaining issue remains before the Court for resolution on another day (or perhaps even by another court), each party shall bear its own costs with regard to these motions.

**SO ORDERED.**

Date:

                                                    SARAH EVANS BARKER, JUDGE
                                                  United States District Court
                                                  Southern District of Indiana

Distribution:

Rebecca Biller Elmore
KRIEG DEVAULT
relmore@kdlegal.com

Max W. Hittle , Jr
KRIEG DEVAULT, LLP
mhittle@kdlegal.com

Jeremy Byan Johnson
WOODEN & MCLAUGHLIN LLP
dking@woodmaclaw.com

Douglas B. King
WOODEN & MCLAUGHLIN LLP
dking@woodmaclaw.com

Edward A. McConwell , Sr
ed@mcconwell.com

Marc T. Quigley
KRIEG DEVAULT
mquigley@kdlegal.com

Alastair J. Warr
KRIEG DEVAULT
awarr@kdlegal.com

Jill E. Zengler
UNITED STATES ATTORNEY'S OFFICE

jill.zengler@usdoj.gov